IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INFINITY COMPUTER PRODUCTS, INC., <br>     Plaintiff, <br><br> v. <br><br> BROTHER INTERNATIONAL CORPORATION, et al., <br>     Defendants. | CIVIL ACTION <br><br><br><br><br> No. 10-3175 |

ORDER

AND NOW, this 21st day of March, 2011, upon consideration of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 159) and Plaintiff's Response in Opposition thereto (Doc. No. 161), the Court DENIES Defendants' Motion for the reasons that follow.

I.     BACKGROUND

Plaintiff Infinity Computer Products, Inc. ("Infinity") alleges that several manufacturers and sellers of facsimile machines ("Defendants")[1] infringed its patents that describe a method for using an interface circuit in a facsimile machine to transform the machine into a scanner and printer when it is connected to a computer. Infinity's November 12, 2010 Amended Complaint charges that, by manufacturing and selling fax machines with these interface circuits, each of the Defendants directly and indirectly violated U.S. patent numbers 6,894,811 ("'811 Patent") and 7,489,423 ("'423 Patent") (collectively "the Patents"). Infinity claims that all Defendants, except

---

[1] The named Defendants in this action are: Brother International Corporation; Canon USA, Inc.; Dell Inc.; Eastman Kodak Company; Epson America Inc.; Hewlett-Packard Company; Konica Minolta Business Solutions, U.S.A., Inc.; Lexmark International, Inc.; Oki Data Americas, Inc.; Panasonic Corporation of North America; Ricoh Americas Corp.; Samsung Electronics America, Inc.; Sharp Electronics Corporation; Toshiba America Business Solutions, Inc.; and Xerox Corporation.

for Epson America Inc., committed these violations willfully.

Defendants move to dismiss Infinity's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The direct claims fail, they argue, because they do not allege "how merely making, selling or using a fax machine can constitute direct infringement of method claims that require, among other things, connecting to a computer." (Doc. No. 159, at 12.) According to Defendants, the indirect claims fall short too because the Amended Complaint lacks "facts supporting several of the established elements of an indirect infringement claim, such as prior knowledge of the [Patents], the identity of third-party direct infringers, specific intent, and that the accused products have no substantial non-infringing uses." (Doc. No. 159, at 12.) Infinity counters that Defendants conflate the proof it must supply post-discovery with the factual allegations sufficient to survive dismissal at this juncture.

II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint's allegations on the grounds that they fail "to state a claim upon which relief can be granted." The Court must accept true "[t]he facts alleged in the complaint and the reasonable inferences that can be drawn from those facts." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006). Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that a complaint need not include detailed factual allegations to withstand dismissal, but must comprise "more than labels and conclusions, and a formulaic recitation of the cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Determining whether the complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

In a patent case, a complaint need not "include each element of the claims in the asserted patent," but must put the alleged infringer on notice of what the cause of action is and the grounds upon which it rests. McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007).

III. ANALYSIS

*A. Direct Infringement Claim*

Defendants initially press for dismissal of Infinity's direct infringement claim on the grounds that Infinity failed to allege that Defendants' *used* the interface circuit by connecting the fax machines to computers. But their Motion to Dismiss balloons into a much broader challenge that begins by calling into question the continuing validity of Form 18 of the Appendix to the Federal Rules of Civil Procedure.

Form 18 provides a template for a complaint of direct patent infringement and consists of four paragraphs, which set forth: (1) a statement of jurisdiction; (2) an identification of the patent at issue and an assertion of ownership; (3) an assertion and description of how Defendant is infringing the patent; and (4) an assertion that Plaintiff has complied with the statutory notice requirements and has given Defendant written notice of the infringement. In McZeal, the Federal Circuit held that Form 18 fulfils the Twombly pleading standard for a direct infringement claim. 501 F.3d at 1357. Some quarrel that Iqbal's slightly more stringent standard tips the scales,

rendering Form 18 non-compliant with Rule 8(a). See, e.g., Kenneth O'Rourke, et al., Ashcroft v. Iqbal: The Sleeper Supreme Court Decision for Patent Litigators?, Vol. 21, No. 12 Intell. Prop. & Tech. L.J. 6, 8 (2009). But this argument misses the mark: the Supreme Court declared in Twombly that altering the Federal Rules of Civil Procedure cannot occur via judicial interpretation, see 550 U.S. at 569 n.14, and under Rule 84, "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." See generally, Richard A. Kamprath, Patent Pleading Standards After Iqbal: Applying Infringement Contention as a Guide, 13 SMU Sci. & Tech. L. Rev. 301, 312 (2010) (noting that can Form 18 can still be used to plead patent infringement cases even though the form may appear to be incongruent with Twombly and Iqbal).

Defendants urge dismissal of Infinity's direct infringement claim by challenging that Inifnty's Amended Complaint does not adequately plead the third element: how Defendants infringed (or are infringing) the Patents. Form 18 instructs, by way of example, that plaintiffs can meet this requirement by alleging that "[t]he defendant has infringed and is still infringing the [patent] by making, selling, and using electric motors that embody the patented invention, and the defendant will continue to do so unless enjoined by this court." Following Form 18's lead, Infinity's Amended Complaint alleges something equivalent to the following for each Defendant regarding both the '811 and '423 Patents:

> On information and belief, and in violation of 35 U.S.C. § 271(a), Defendant Brother [International Corporation] has, literally and under the doctrine of equivalents, infringed the '811 Patent and still is, literally and under the doctrine of equivalents, infringing the '811 Patent, by, among other things, making, using, offering for sale, and/or selling a facsimile machine with an interface circuit that allows it to be coupled to a computer as a printer or scanner without authority, including but not limited to its MFC-5890CN and MRC-6940CW products and similar products, and

will continue to do so unless infringing activities are enjoined by this Court.
(Doc. No. 158, at 11 (¶ 39).)

According to Defendants, despite the marked similarity between Infinity's Amended Complaint and Form 18, Infinity's factual allegations are insufficient to put them on notice of the claims against them. They rely on the Third Circuit's decision in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), which instructs lower courts to "conduct a two-part analysis," first separating "the factual and legal elements of a claim," and then determining "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id. at 210–11. Defendants suggest that correctly applying Fowler requires the Court to ignore the legal language that Infinity pulled form Form 18 and read only the portions of Infinity's claims that qualify as factual allegations, strictly speaking. For example, Defendants would have the Court omit from consideration the portions of Infinity's Amended Complaint that allege that Defendants have "literally and under the doctrine of equivalents, infringed the [] Patent[s] and still [are], literally and under the doctrine of equivalents, infringing the [] Patent[s]." (E.g., Doc. No. 158, at 11 (¶ 39).)

Admittedly, the approach Defendants urge takes the teeth out of Infinity's claims; Infinity would be left with a pleading containing only the allegations that Defendants made, used, offered for sale, or sold fax machines with an interface circuit, without any context to understand why that behavior might give rise to a lawsuit. After all, the Patents' terms, plus allegations of infringement, provide the basis for Infinity's causes of action. Importantly, though, no court has adopted the literal approach to Fowler's mandate that Defendants urge. This Court will not read Form 18 out of existence by endorsing their novel and unsupported interpretation of Third

5

Circuit precedent. Based on Form 18's continuing validity, the Court concludes that Infinity's Amended Complaint crosses the threshold established by Twombly and Iqbal insofar as it mimics Form 18's language.

Even once the Court rejects the Defendants' interpretation of Fowler and endorses Infinity's use of Form 18, three specific objections to Infinity's direct infringement allegation remain. First, Defendants submit that Infinity's claims should be dismissed because the Amended Complaint lacks factual allegations that Defendants actually connected the fax machines to computers. Title 35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." For method patent claims, direct infringement occurs when a party performs all of the steps of the process. BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007). Defendants contend that, by omitting the specific allegation that Defendants connected their fax machines to computers, Infinity's claims "do not account for the fact that the claims of the Patents[] are method claims" that require actual use of the methods comprising the Patents' claims. (Doc. No. 159, at 19.)

The '811 Patent, which involves the transmission of data signals through "a bi-directional direct connection via passive link" between a fax machine and computer (e.g., '881 Patent, claim 6), contains seven independent claims:

> 1. A method of creating a scanning capability from a facsimile machine to a computer . . . [;]
>
> 6. A method of creating a scanning capability from a facsimile machine to a computer equipped with a modem . . . [;]

>7. A method of making a facsimile machine operable as a scanner and printer for a personal computer . . . [;]
>
>12. A method of using a facsimile machine as a scanner and printer . . . [;]
>
>18. A method of using a facsimile machine with a computer, one or both of which being connected to a telephone line such that said facsimile machine operates as a scanning and printing device . . . [;]
>
>19. A method of using a facsimile machine with a computer, one or both of which being connected to a telephone line such that said facsimile machine operates as a printing device . . . [; and]
>
>20. A method of making a facsimile machine operable as a scanner and printer for a computer . . . .

Patent '423, also premised on the use of "a bi-directional direct connection via passive link," includes three independent claims:

>1. A method of transferring digital image signals between a computer equipped with a send/receive driver communications software and a facsimile machine to cause said facsimile machine to operate as a printing device . . . [;]
>
>2. A method of connecting the scan or print apparatus of a facsimile machine configuration to a computer, in order to support image data transmissions for scanning or printing between the facsimile machine and the computer . . . [; and]
>
>6. A method of using a facsimile machine operably linked to a computer to print transmitted digital image data received from a computer by the facsimile machine, or scan digital image data transmitted from the facsimile machine to the computer . . . .

According to Defendants, the detailed language explaining the steps taken to apply each of these methods specifically requires the alleged patent infringer to use a computer. Defendants Motion to Dismiss implies that their customers, not Defendants themselves, linked the machines containing interface circuits to computers, rendering Defendants blameless because they did not perform all steps of the processes covered by the Patents.

The Court need not decide whether Defendants correctly classify computer usage as a prerequisite to patent infringement in this case because Infinity has, in fact, pled that Defendants performed all of the protected steps. Accepting as true "[t]he facts alleged in the complaint and the reasonable inferences that can be drawn from those facts," Farber, 440 F.3d at 134, at the very least Infinity's Amended Complaint implies that each defendant used a facsimile machine with an interface circuit in conjunction with a computer, thereby infringing the Patents. (Doc. No. 158, at, e.g., 11 (¶ 39).) Although Defendants' customers may have been the intended end-users of the product, Infinity claims that Defendants used the fax machines as well, an allegation the Court finds plausible given that each defendant may have connected the fax machines to computers during the research and development process, for example.

Second, Defendants argue that Infinity's direct infringement claim should be dismissed because its "allegations are speculative and conclusory." (Doc. No. 159, at 19.) Defendants rely primarily on In re Papst Licensing GMBH & Co. KG Litig., 585 F. Supp. 2d 32 (D.D.C. 2008), where the District of Columbia District Court held that allegations made "on information and belief" failed to state a claim for patent infringement. In Papst, the plaintiff initially claimed that "[a] reasonable opportunity for further investigation or discovery is likely to provide evidentiary support" that the defendant violated the relevant patent. Id. at 35. The court held that this qualified as mere speculation and merited dismissal, and that swapping the problematic "reasonable opportunity" language for the phrase "on information and belief" would not lead to a different result. Id. Notwithstanding the suggested change, the complaint lacked information about the circumstances giving rise to the claims, such that "the Court can only presume that Papst cannot point to any actual facts giving rise to a valid claim for relief" where the complaint

offered only "legal conclusions cast as factual allegations." Id.

Infinity's use of "on information and belief" in its Amended Complaint carries a far different meaning. Federal Rule of Civil Procedure 11(b) permits litigants to set forth allegations made to the "best of the persons's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." The Rule affords the parties the opportunity to present factual contentions that either have evidentiary support or are specifically identified to likely have evidentiary support after further investigation and discovery. Fed. R. Civ. P. 11(b). As such, Infinity's use of the phrase "on information and belief" does not automatically render the Amended Complaint subject to dismissal. In Papst, the lack of reasonable inquiry or factual underpinnings meant that the complaint failed to cross the "threshold of plausibility." Papst, 585 F. Supp. 2d at 36 (quoting Twombly, 127 S.Ct. at 1966). By contrast, Infinity's Amended Complaint identifies for each defendant at least one product that included the patented interface circuit. Here, "on information and belief" refers to a lack of absolute certainty, not a lack of factual support.

Finally, Defendants aver that Infinity's direct infringement claims remain deficient even when compared to Form 18 because Infinity's Amended Complaint merely points to products that allegedly infringed its patents, failing to allege that Defendants employed the protected methods. The Court is not persuaded. Each of Infinity's claims alleges infringement of a method patent and then explains that the embedded interface circuit allows the machine to be coupled to computers for use as a printer or scanner, violating the Patents. (E.g., Doc. No. 158, at 11 (¶ 39).) Alleging a method patent violation and identifying a product that violates the patent implies that the Defendants breached Infinity's Patents by virtue of employing the protected

method in the listed products.  Because such an inference can be drawn from the Amended Complaint as written, Infinity states a claim for direct method patent infringement.  See Farber, 440 F.3d at 134; McZeal, 501 F.3d at 1357 ("[A] plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent" but must only include "facts sufficient to place the alleged infringer on notice as to what he must defend.").

None of the challenges that Defendants level against Infinity's direct infringement claim hold water.  Accordingly, the Court denies Defendants' Rule 12(b)(6) motion to dismiss this portion of Infinity's Amended Complaint.

*B. Indirect Infringement Claim*

Infinity sued Defendants not only for direct patent infringement, but also for indirect patent infringement.  Indirect infringement claims come in two forms.  Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  Under § 271(c), "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  Infinity's Amended Complaint raises claims under both inducement and contributory infringement theories, and the Court addresses each theory in turn.

*1. Inducement to Infringe*

To state a claim for indirect infringement premised upon inducement, a plaintiff must

assert "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990). Inducement means "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." DSU Medical Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006). Indirect infringement can only occur if the alleged inducer's encouragement actually resulted in direct infringement by a third party. See Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1337 (Fed. Cir. 2008); see also Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

In an attempt to state a claim that Defendants induced others to infringe Infinity's patents, Infinity pleads something like the following with respect to each defendant, for each patent:

> On information and belief, and in violation of 35 U.S.C. § 271(b), Defendant Brother [International Corporation] has actively induced others to infringe one or more claims of the '811 patent in this district and elsewhere in the United States. Defendant Brother knowingly induced infringement and possessed specific intent to encourage another's infringement which led to direct infringement by a third party by soliciting distributors and/or retailers to offer for sale and/or sell the infringing products, and by soliciting end users to purchase and use the infringing products, in this district and elsewhere in the United States.

(Doc. No. 158, at 11–12 (¶ 42).) Infinity also alleges that it "engaged in correspondence" with, and disclosed the existence of, the Patents to all defendants except Dell, Epson, Kodak, and Oki Data, and that defendants with whom it corresponded therefore "had knowledge of Infinity's patents." (Id. at 11–12 (¶ 45–46).) In pressing for dismissal, Defendants contend that these allegations lack "facts supporting several of the established elements of an indirect infringement

11

claim, such as prior knowledge of the [Patents], the identity of third-party direct infringers, [and] specific intent." (Doc. No. 159, at 12.)

Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, although Defendants argue that Infinity's complaint fails to state facts supporting prior knowledge of the Patents and specific intent, Infinity need not have made factual allegations with any more particularly with respect to these state-of-mind elements. See Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009) (comparing the particularly required to adequately plead fraud or mistake with the generality permitted with respect to all other mental states). The four cases that Defendants cite in support do not controvert this well-established principle. (See Doc. No. 159, at 21 (citing Iqbal, 129 S. Ct. at 1952; In re Bill of Lading, 695 F. Supp. 2d 680 (S.D. Ohio 2010) Bender v. Motorola, Inc., No. C 09-1245 SBA, 2010 WL 726739 (N.D. Cal. Feb 6, 2010); Mallinckrodt, Inc. v. E-Z-Em Inc., 670 F.Supp.2d 349 (D. Del. 2009)). The complaints in those cases lacked any *allegation* of the required intent, differentiating them from Infinity's Amended Complaint.

At first blush, Defendants' third gripe—that Infinity fails to identify the third-party direct infringers—holds more water. Unpublished cases, particularly out of Texas and California district courts, have occasionally found complaints of induced infringement subject to dismissal when they failed to identify a direct infringer or how the indirect infringement occurred. See, e.g., Realtime Data, LLC v. Morgan Stanley, 721 F. Supp. 2d 538, 544 (E.D. Tex. 2010). A closer inspection of this precedent, however, renders it distinguishable from the inducement claim that Infinity raises here. When courts have dismissed indirect infringement claims for failure to identify a third party, they have typically highlighted the complete lack of factual

backing that the plaintiffs supplied in their pleadings.  One case that Defendants cite to for support dismissed this inducement allegation:

> Upon information and belief, the Defendants have [] contributed to the infringement of one or more claims of the [patent], and/or actively induced others to infringe one or more claims of the [patent], in this District and elsewhere in the United States.

Jaoa Bock Transaction Sys. of Tex. v. AT&T, Inc., No. 09-cv-0208, slip. op., at 7 (E.D. Tex. June 25, 2009 (Doc. No. 45)).  Other cases have dismissed device patent infringement claims on the grounds that alleging the sale of an infringing product to a third party does not suffice to state a claim that the third party infringed the patent.  See, e.g., Advanced Analogic Techs., Inc. v. Kinetic Techs., No. C-09-1360, 2009 WL 1974602, at *1 (N.D. Cal. Jul.8, 2009).

Comparing the claims raised in these cases with the claims that Infinity raises here convinces the Court that Infinity has adequately alleged inducement.  First, Infinity's Amended Complaint provides significantly more detail regarding what products employ the protected methods than the gross majority of cases that Defendants lean upon.  Second, although not in great detail, Infinity alleges infringement by third parties (albeit not identified by name); it does not simply claim that Defendants sold the infringing products to third parties, as the problematic complaint in Advanced Analogic Techs did.  2009 WL 1974602, at *1.  Most importantly, Defendants have actual notice of the third parties and the third parties' potential infringement of the Patents.  As they argue that the Court should dismiss Infinity's direct infringement claims, Defendants consistently imply that their customers, and not Defendants themselves, connected the facsimile machines to computers, thereby completing a required step of the Patents.  But as they urge dismissal of the contributory infringement allegation, they disclaim knowledge that these third parties exist.  In other words, the customers central to Defendants' direct infringement

argument are the same third parties that Defendants then aver are unknown to them. Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 127 S.Ct. at 1965. Defendants briefing buttresses the Court's conclusion that Infinity's inducement claim provides notice sufficient to survive dismissal.

### 2. Contributory Infringement

Infinity's contributory infringement claims also meet Rule 8(a)'s pleading threshold. "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1061 (Fed. Cir. 2004)). Infinity's Amended Complaint alleges that Defendants' products are "especially made for use in the infringement of the [Patents]," which, according to Defendants, falls short as it fails to allege the nonexistence of substantial non-infringing uses. Defendants note that "because many, if not all, of the accused facsimile machines can be used without being connected to a computer, Infinity would have no basis to assert that these products have no substantial non-infringing uses." (Doc. No. 159, at 12 n.4.)

Defendants' challenge evinces a misunderstanding of the substantial non-infringing use doctrine as explained by the Federal Circuit in Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009). In that case, Microsoft appealed the district court's denial of its

motion for judgment as a matter of law, arguing that Lucent did not prove contributory infringement because it failed to establish that the products lacked substantial non-infringing uses. Id. at 1320.  Lucent's patent disclosed a "method of entering information into fields on a computer screen without using a keyboard."  Id. at 1308.  The jury found that Microsoft had infringed the patent because Microsoft Outlook, Microsoft Money, and Windows Mobile included a calendar tool that displayed a graphic of a monthly calendar and, once the user selected a date with the tool, entered the numerical date into the corresponding field (the "date-picker").  Id. at 1317.  Microsoft pressed the court to overturn the jury's contributory infringement verdict on the grounds that the entire software packages had substantial non-infringing uses because not all users of the software would use the date-picker.  The court explained:

> [A]s framed by the parties, the main issue reduces to whether the 'material or apparatus' is the entire software package or just the particular tool (e.g., the calendar date-picker) that performs the claimed method.  If the former, then Microsoft prevails because the entire software package has substantial noninfringing uses.  If the material or apparatus is the specific date-picker tool, then Lucent wins because that tool was "especially made or especially adapted for" practicing the claimed method.

Id. at 1320.

The court adopted Lucent's approach, noting that "[i]f, instead of selling Outlook with the date-picker, Microsoft had offered the date-picker for sale as a separate download to be used with Outlook, there would be little dispute that Microsoft was contributing to infringement of [Lucent's patent]."  Id.  It found controlling its statement in Ricoh that an infringer "should not be permitted to escape liability as a contributory infringer merely by embedding [the infringing apparatus] in a larger product with some additional, separable feature before importing and selling it."  Ricoh, 550 F.3d at 1337.  In order to prevail on its contributory infringement claim, Lucent

15

need only have established that the date-picker was "especially made or especially adapted for" filling computer fields without using a keyboard. <u>Lucent</u>, 580 F.3d at 1320.

<u>Lucent</u>'s holding makes clear that Infinity's contributory infringement allegation states a claim for relief, even though it lacks language about substantial non-infringing uses. (<u>See</u> Doc. No. 158, at 12 (¶ 43).) Although the fax machines that Defendants manufacture may have substantial non-infringing uses, the interface circuits themselves qualify as the "material or apparatus" under scrutiny—just as the date-picker, and not the software as a whole, was examined for substantial non-infringing uses in <u>Lucent</u>. Since Lucent prevailed on its contributory infringement claim by proving that the date-picker was designed to employ the protected method, Infinity's allegations that the interface circuits were designed to perform the steps covered by the Patents state a claim for relief that withstands 12(b)(6) review.

IV.   CONCLUSION

Infinity's Amended Complaint states claims against all defendants for direct and indirect infringement of its '811 and '423 Patents. In so holding, the Court does not intend to endorse Infinity's complaint as a model that future plaintiffs should follow. Indeed, in a few instances, the Court must draw reasonable inferences, properly considered at the motion-to-dismiss stage, in order to find that the Amended Complaint fulfills Rule 8(a)'s pleading requirements. <u>See</u> <u>Farber</u>, 440 F.3d at 134. Defendants argue that Infinity's claims do not meet Rule 8(a)'s threshold because they lack sufficient notice of what Infinity's cause of action is and the grounds upon which it rests. <u>See</u>  <u>McZeal</u>, 501 F.3d at 1357. Ultimately, though, Defendants conflate the factual allegations required to satisfy notice pleading standards with the substantially more detailed proof that Infinity must put forth as the case moves forward. Thus, for the reasons stated in detail above, the Court

DENIES Defendants' Motion to Dismiss for failure to state a claim.

                                        BY THE COURT:

                                        /S/LEGROME D. DAVIS

                                        Legrome D. Davis, J.