# EXHIBIT 2

<table>
<tr><td>112TH CONGRESS<br><i>1st Session</i></td><td>HOUSE OF REPRESENTATIVES</td><td>REPT. 112–98<br>Part 1</td></tr>
</table>

## AMERICA INVENTS ACT

---

JUNE 1, 2011.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

Mr. SMITH of Texas, from the Committee on the Judiciary, submitted the following

# R E P O R T

together with

## DISSENTING VIEWS AND ADDITIONAL VIEWS

[To accompany H.R. 1249]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1249) to amend title 35, United States Code, to provide for patent reform, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

### CONTENTS

|  | Page |
|---|---|
| The Amendment | 1 |
| Purpose and Summary | 38 |
| Background and Need for the Legislation | 40 |
| Hearings | 57 |
| Committee Consideration | 58 |
| Committee Votes | 58 |
| Committee Oversight Findings | 63 |
| New Budget Authority and Tax Expenditures | 63 |
| Congressional Budget Office Cost Estimate | 63 |
| Performance Goals and Objectives | 73 |
| Advisory on Earmarks | 73 |
| Section-by-Section Analysis | 73 |
| Agency Views | 85 |
| Changes in Existing Law Made by the Bill, as Reported | 89 |
| Dissenting Views | 162 |
| Additional Views | 163 |

99–006

54

*Transitional program for covered business method patents*

A number of patent observers believe the issuance of poor business-method patents during the late 1990's through the early 2000's led to the patent "troll" lawsuits that compelled the Committee to launch the patent reform project 6 years ago. At the time, the USPTO lacked a sufficient number of examiners with expertise in the relevant art area. Compounding this problem, there was a dearth of available prior art to assist examiners as they reviewed business method applications. Critics also note that most countries do not grant patents for business methods.

The Act responds to the problem by creating a transitional program 1 year after enactment of the bill to implement a provisional post-grant proceeding for review of the validity of any business method patent. In contrast to the era of the late 1990's-early 2000's, examiners will review the best prior art available. A petition to initiate a review will not be granted unless the petitioner is first sued for infringement or is accused of infringement. The program otherwise generally functions on the same terms as other post-grant proceedings initiated pursuant to the bill. Any party may request a stay of a civil action if a related post-grant proceeding is granted. The program sunsets after 10 years, which ensures that patent holders cannot delay filing a lawsuit over a shorter time period to avoid reevaluation under the transitional program.

*Jurisdictional and procedural matters*

### a) State court jurisdiction and the US Court of Appeals for the Federal Circuit

The US district courts area given original jurisdiction to hear patent cases,[57] while the US Court of Appeals for the Federal Circuit adjudicates all patent appeals.[58] The Supreme Court ruled in 2002,[59] however, that patent counterclaims do not give the Federal Circuit appellate jurisdiction over a case.

The Act clarifies the jurisdiction of the US district courts and stipulates that the US Court of Appeals for the Federal Circuit has jurisdiction over appeals involving *compulsory* patent counterclaims. The legislative history of this provision, which we reaffirm and adopt as our own, appears in the Committee Report accompanying H.R. 2955 from the 109th Congress,[60] which the Committee reported favorably to the House on April 5, 2006.

### b) Joinder

The Act also addresses problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits.

The Act amends chapter 29 of the Patent Act by creating a new § 299 that addresses joinder under Rule 20 and consolidation of trials under Rule 42. Pursuant to the provision, parties who are accused infringers in most patent suits may be joined as defendants

---

[57] 28 USC § 1338.
[58] 28 USC § 1295.
[59] *Holmes Group, Inc., v. Vornado Air Circulation Systems, Inc.* 535 U.S. 826 (2002).
[60] H. Rep. 109–405.

55

or counterclaim defendants only if: (1) relief is asserted against the parties, jointly, severally, or in the alternative, arising out of the same transaction regarding the manufacture, use, or importation of the accused product or process; and (2) questions of fact common to all of the defendants will arise in the action. New § 299 also clarifies that joinder will not be available if it based solely on allegations that a defendant has infringed the patent(s) in question.[61]

*Technical amendments*

The Act contains technical amendments to improve the organization of the patent statute.

*Travel expenses and payment of administrative judges*

The USPTO Director is authorized to conduct programs or exchanges pertaining to intellectual property law and protection "domestically and throughout the world." The House bill clarifies that this authority includes expending funds to cover the subsistence and travel expenses of non-Federal employees who attend these programs.

The House bill also clarifies that the Director may fix the pay for administrative patent judges and administrative trademark judges under the new Patent Trial and Appeal Board set forth in Section 6 of the bill.

*Patent and Trademark Office funding*

The USPTO is a fee-funded agency. The revenue it collects from fees imposed on inventors and trademark filers is deposited in a special USPTO appropriations account in the Treasury. To obtain funding for its operations, the agency must request the revenue back from congressional appropriators. Since the early 1990's, however, more than $800 million has been diverted from the agency and spent on non-USPTO initiatives.

The Committee believes the USPTO could operate more efficiently and productively if the agency had full access to all of its fee-generated revenue. The House bill therefore creates a USPTO revolving fund within the Treasury that allows the agency to keep all of the funds it raises until expended.

The provision also requires the Director to submit an annual spending plan as well as an annual year-end report to the House and Senate Appropriations and Judiciary Committees.

*Satellite offices*

The USPTO is conducting a pilot to create and operate a new satellite office located in Detroit. The bill requires the Director to establish three other satellite offices within a 3-year window, subject to available resources. The legislation includes criteria that must be invoked when selecting the new sites.

---

[61] Section 299 legislatively abrogates the construction of Rule 20(a) adopted in *MyMail, Ltd. v. America Online, Inc.,* 223 F.R.D. 455 (E.D. Tex. 2004); *Sprint Communications Co. v. Theglobe.com, Inc.,* 233 F.R.D. 615 (D. Kan. 2006); *Adrain v. Genetec Inc.,* 2009 WL3063414 (E.D. Tex. September 22, 2009); *Better Educ. Inc. v. Einstruction Corp.,* 2010 WL 918307 (E.D. Tex. March 10, 2010); *Mannatech, Inc. v. Country Life,* LLC, 2010 WL 2944574 (N.D. Tex. July 26, 2010); *Alford Safety Services, Inc., v. Hot-Hed, Inc.,* 2010 WL 3418233 (E.D. La. August 24, 2010); and *Eolas Technologies, Inc. v. Adobe Systems, Inc.,* 2010 WL 3835762 (E.D. Tex. September 28, 2010)—effectively conforming these courts' jurisprudence to that followed by a majority of jurisdictions. *See generally Rudd v. Lux Products Corp.,* 2011 WL 148052 (N.D. Ill. January 12, 2011).